UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KRISTIN M. MANNING,

                  Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.

**REPORT AND RECOMMENDATION**

09-CV-0088
(FJS/VEB)

## I. INTRODUCTION

In March of 2006, Plaintiff Kristin M. Manning filed an application for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since January 15, 2006, due to herniated discs, obesity, depression, and anxiety. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through her attorneys, Olinsky & Shurtliff, commenced this action on January 26, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for SSI and DIB on March 14, 2006, alleging disability beginning on January 15, 2006. (T at 45, 267).[1]  The application was denied initially and on reconsideration. (T at 33, 40). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T at 41). A hearing was held in Syracuse, New York on May 28, 2008, before ALJ Robert E. Gale. (T at 277-305).  Plaintiff, represented by counsel, appeared and testified.  (T at 277).  On July 22, 2008,  ALJ Gale issued a decision denying the application for benefits.  (T at 15-26).  Plaintiff timely filed a request for review of that decision.  The ALJ's decision became the Commissioner's final decision on January 14, 2009, when the Appeals Council denied Plaintiff's request. (T at 5-9).

Plaintiff, through counsel, timely commenced this action on January 26, 2009. (Docket No. 1).  The Commissioner interposed an Answer on July 17, 2009 (Docket No. 10). Plaintiff filed a supporting Brief on August 31, 2009. (Docket No. 12).  The Commissioner filed a Brief in opposition on October 15, 2009. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Plaintiff's motion be granted, that the Commissioner's motion be denied, and that this matter be remanded

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

for further administrative proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

   **1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements under the Act through June 30, 2006. (T at 17). He found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability, January 15, 2006. (T at 17). The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: degenerative disc disease, anxiety disorder, and a depressive disorder. (T at 17).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 19).

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to occasionally lift and carry 20 pounds, frequently lift/carry 10 pounds, sit for 6 hours in an 8-hour work day, and stand or walk for 4 hours in an 8-hour work day. (T at 20). The ALJ

determined that Plaintiff retained the RFC to occasionally crawl and squat, but that she could not climb ladders or scaffolds. (T at 20). He found that she can understand, remember, learn, and perform simple tasks; maintain attention and concentration; interact appropriately with coworkers and supervisors; and occasionally interact with the public. (T at 20).

The ALJ concluded that Plaintiff was unable to perform her past relevant work. (T at 24). The ALJ also noted that Plaintiff, born October 8, 1976, was 29 years old on the alleged onset date, and is therefore considered a "younger individual" as defined in 20 C.F.R. § 416.963. (T at 24). The ALJ found that given Plaintiff's age, education (high school equivalent), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 25). As such, the ALJ found that Plaintiff has not been under a disability, as defined under the Act at any time relevant to the ALJ's decision. (T at 26). As noted above, the ALJ's decision became the Commissioner's final decision on January 14, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 5-9).

**2.    Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers four (4) principal arguments. First, she contends that the ALJ erred by finding that her obesity was not a severe impairment. Second, Plaintiff argues that the ALJ did not properly apply the treating physician's rule. Third, she asserts that the ALJ's RFC determination was not supported by substantial evidence. Fourth, Plaintiff contends that the ALJ should have consulted a vocational expert. Each argument will be addressed in turn.

### a. Obesity

At step two of the sequential evaluation, the ALJ determined that Plaintiff's obesity was not a severe impairment. (T at 18). Plaintiff challenges this finding.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

Plaintiff is approximately five feet, five inches tall and has weighed as much as 267 pounds. (T at 152). She contends that her obesity is a severe impairment. Plaintiff points to the assessment of Dr. Moore, her treating chiropractor, who opined obesity is a factor with regard to Plaintiff's back problems. (T at 152). Dr. Yola Augustin, Plaintiff's treating physician, referred her to a nutritionist for consultation regarding high cholesterol and obesity. (T at 220). Dr. Augustin also recommended that Plaintiff use Glucophage to treat her obesity and polycystic ovarian syndrome. (T at 253).

The ALJ recognized Plaintiff's obesity, but concluded that the "record did not evidence the claimant's obesity imposing more than minimal limitations on her ability to perform basic work activities." (T at 18). This Court finds that the ALJ's assessment was supported by substantial evidence.

Plaintiff has not pointed to any evidence indicating that her obesity, either alone or in combination with other impairments, imposes more than minimal limitations on her ability to perform basic work activities. Plaintiff's obesity pre-dated the alleged onset of disability (T at 143), she maintained employment during that period (T at 64), and stopped working in December of 2004 because her manager was "unruly" and not because of any limitation arising from obesity. (T at 56). The treatment prescribed by Dr. Augustin seemed to help Plaintiff lose weight and she was noted to gain weight when she stopped taking the medication. (T at 253). Indeed, Plaintiff's weight decreased significantly after the onset of disability, dropping from 267 pounds in March 2006 (T at 152) to 225 pounds in January 2008. (T at 230). Although Dr. Moore indicated that Plaintiff's obesity was a factor in Plaintiff's continued back problems (T at 152), this assessment was made at Plaintiff's peak weight, she did not suggest any additional limitations imposed by obesity (either alone or

8

in combination with other impairments), and, in any event, chiropractors are not acceptable medical sources under the Commissioner's Regulations and their assessments are not entitled to any special weight. See 20 C.F.R. § 404.1513(a); see also Diaz v. Shalala, 59 F.3d 307, 312-314 (2d Cir.1995). Accordingly, this Court finds no reversible error as to this portion of the ALJ's analysis.

### b. Treating Physician's Rule

Plaintiff argues that the ALJ failed to properly apply the treating physician's rule when reaching his RFC determination.

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R.

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

9

§ 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In April of 2007, Dr. Augustin, Plaintiff's treating physician, opined that Plaintiff could handle a "desk job assignment," provided she did not need to lift, carry, handle, push, or pull more than 10 pounds. (T at 216). In April of 2008, Dr. Augustin indicated that Plaintiff could work "ten hours" a week and should avoid lifting, pushing, pulling, or carrying greater than or equal to 10 pounds. (T at 253).

The ALJ recognized that Dr. Augustin was a treating source, but concluded that "her opinions were inconsistent with the claimant's activities and were not entirely supported by the objective evidence of record." (T at 22). As such, the ALJ elected not to give Dr. Augustin's opinions controlling weight. (T at 22).

This Court finds that the ALJ's assessment was insufficient. The ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004); see also 20 C.F.R. § 404.1527(d)(2) (stating that the agency "will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion"). Here, the ALJ explained that he was not affording controlling weight to Dr. Augustin's opinion, but did not say what weight, if any, it was entitled to.

Moreover, the ALJ discounted Dr. Augustin's assessment, opining that her assessment was "inconsistent with claimant's activities." (T at 22). However, the ALJ overstated the extent of Plaintiff's activities. For example, the ALJ noted that in May 2007, Plaintiff moved her personal belongings to another residence and reported carrying a table.

10

(T at 22). Presumably, when referring to the activities that were inconsistent with Dr. Augustin's findings, the ALJ intended to include this incident. However, the report documenting Plaintiff's move did not state how heavy the "belongings" or table were and, in fact, indicates that Plaintiff fell and injured herself while carrying the table. (T at 196). The ALJ appears to have assumed that the personal belongings and table were heavy and that moving these items involved exertion beyond the levels assessed by Dr. Augustin. However, there is no indication as to whether Plaintiff received assistance in moving her belongings or how much work Plaintiff actually performed. Before using this brief statement in a medical record to discount the findings of a treating physician, the ALJ was duty-bound to inquire into these details.[5]

Further, the ALJ noted the exertional requirements of part-time work performed by the Plaintiff (*i.e.* standing/walking 3 to 5 hours a day, and lifting up to 10 pounds) in support of his RFC finding. (T at 22). Presumably, when indicating that Dr. Augustin's findings were inconsistent with Plaintiff's activities, the ALJ also meant to refer to Plaintiff's part-time work. In other words, the ALJ found that the work Plaintiff performed during her part-time employment indicated a greater level of ability than that found by Dr. Augustin. However, the ALJ overstated the nature and extent of Plaintiff's part-time employment. Plaintiff's testimony indicated that the work was performed for "maybe six hours a week, if that." (T at 285). She testified that she called in sick "a lot for my back" and decided to leave the job for that reason. (T at 285). Also, the ALJ's statement that Plaintiff's job involved "cleaning

---

[5]It is well-settled in this Circuit that in light of the "essentially non-adversarial nature of a benefits proceeding," ALJs have an affirmative duty to develop the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).

bathrooms" suggests a greater level of exertion than was actually the case. Rather, Plaintiff testified that she wiped down the sink in the ladies room and checked on the floor and toilet areas, reporting any issues in that regard to the manager. (T at 284). Her testimony indicated that she did not actually "clean" the bathroom, beyond wiping the sink.

The ALJ also referenced Plaintiff's statements regarding her activities of daily living and noted that she was able to use the computer, shop, and care for her personal needs. However, it is well-settled that "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

It is difficult to determine the extent to which the ALJ relied upon Plaintiff's activities when discounting Dr. Augustin's assessment and which activities in particular the ALJ relied upon. This is because the ALJ did not provide a comprehensive statement of his reasons for discounting that assessment. Also, as noted above, the ALJ overstated the extent of certain of Plaintiff's activities and made assumptions about other activities that are not supported by the record. A remand is warranted under the circumstances. See Halloran, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ[ ]s that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

This Court noted that the ALJ did give some weight to assessments provided by a

State medical consultant and Dr. Kalyani Ganesh, a consultative examiner. (T at 21-22). However, the ALJ's failure to follow the treating physician's rule precludes a finding that his assessment is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987)("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); Medina v. Barnhart, No. 03-CV-0079, 2004 WL 487310, at *10 (S.D.N.Y. Mar. 11, 2004) ("The ... failure in this case to provide 'good reasons' for discounting the opinion of plaintiff's treating physician and to fully develop the record preclude[s] the Court from concluding that the finding of no disability is supported by 'substantial evidence' and should be upheld."). Thus, this Court recommends a remand for further proceedings, that the ALJ be instructed to afford Dr. Augustin's assessment proper deference, and, if the assessment is not provided controlling weight on remand, that a comprehensive statement of reasons be provided. See 20 C.F.R. §§ 404.1527(d)(2), 416. 927(d)(2).

### c.     RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a

claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

Plaintiff challenges two components of the ALJ's RFC determination.  First, she contends that the ALJ erred in determining her physical RFC for the reasons stated above (because he failed to properly apply the treating physician's rule).  Second, Plaintiff argues that the ALJ's mental RFC determination was flawed.  As to the former, this Court agrees that a remand is required for the reasons stated above; the ALJ's physical RFC determination was tainted by his failure to properly adhere to the requirements of the treating physician's rules.  Thus, the remaining issue is whether the RFC determination as to Plaintiff's mental abilities was made in accordance with applicable law and is supported by substantial evidence.

The ALJ found that Plaintiff could understand, remember, learn, and perform simple tasks; maintain attention and concentration; interact appropriately with coworkers and supervisors; and occasionally interact with the public. (T at 20).

Although the record indicates that Plaintiff reported panic attacks, sleep difficulties, mood problems, and occasional suicidal thoughts (T at 234), Plaintiff did not have any psychiatric hospitalizations and there is no indication of outpatient counseling or psychiatric treatment prior to May 2008. (T at 233).  Plaintiff stated that she had no difficulties paying attention,  following instructions, or getting along with authority figures. (T at 85-86).  Dr. Kristen Barry conducted a consultative psychiatric evaluation and noted that Plaintiff has

14

"difficulty at times relating adequately with others and handling stressors." (T at 236). Plaintiff reported that she handles stress "very well" and likewise is capable of dealing with changes in routine. (T at 86). Dr. Barry assessed that Plaintiff was able to follow and understand simple directions and instructions and maintain attention and concentration. (T at 236). Although Dr. Barry noted that Plaintiff "tends to isolate herself and be a loner," (T at 236), Plaintiff reported that she liked to "hang out" with friends, had problems with some family members, but not friends, and had a six-year relationship with a partner. (T at 217). In June 2008, Plaintiff was reported to have no difficulties "at all meet[ing] home, work, or social obligations." (T at 258).

This Court finds that the foregoing evidence adequately supports the ALJ's RFC determination as to Plaintiff's mental abilities. Thus, while a remand is recommended as to the physical limitations, substantial evidence supports the ALJ's finding as to Plaintiff's mental limitations.

### d. Failure to Consult a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. However, the ALJ's consultation of the Grids was based upon his RFC assessment with regard to Plaintiff's physical limitations.  That determination was impacted by the ALJ's

errors in applying the treating physician's rule, as discussed above. As such, the step 5 analysis should be revisited on remand following reconsideration of the treating physician's assessment.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

17

Dated: April 30, 2010
        Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS** to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 30, 2010

_____
Victor E. Bianchini
United States Magistrate Judge